IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RONALD L. EVANS, JR.          )
                             )
        Petitioner,          )
                             )
v.                           )  Civ. No. 12-823-SLR
                             )
DAVID PIERCE, Warden,        )
and JOSEPH R. BIDEN, III,    )
Attorney General of the State )
of Delaware,                 )
                             )
        Respondents.[1]      )

_____

Ronald L. Evans, Jr. Pro se petitioner.

Karen V. Sullivan. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

_____

**MEMORANDUM OPINION**

March 19, 2015
Wilmington, Delaware

_____

[1]Warden David Pierce replaced former warden Perry Phelps, an original party to this case. See Fed. R. Civ. P. 25(d).

**ROBINSON, District Judge**

## I. INTRODUCTION

Presently before the court is petitioner Ronald L. Evans, Jr.'s ("petitioner")

application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2) Petitioner

is incarcerated at the James T. Vaughn Correctional Institution in Smyrna, Delaware.

For the reasons that follow, the court will dismiss his application.

## II. FACTUAL[2] AND PROCEDURAL BACKGROUND

On the morning of July 8, 2008, Sylvia E. Weeks telephoned petitioner to

purchase $85.00 worth of crack cocaine. Petitioner told Weeks to meet him at 867 Paul

Street, Lincoln Park, Dover to complete the drug transaction.

That same morning, Dover Police Officer Peter Martinek was on patrol in the city

limits. Master Corporal Andrew Morris informed Officer Martinek that Weeks had an

outstanding capias for her arrest and that she was in the alley of Paul Street next to a

house on the corner. Corporal Morris suggested that Officer Martinek should approach

the house from the south by using the alley connecting Lincoln Street to Paul Street,

and Corporal Morris planned to approach the house from the north.

Officer Martinek arrived at the Paul Street location first and drove toward the

house via the alley. He stopped approximately fifteen feet north of the house because

he could not get by a white Monte Carlo automobile in the alley. Petitioner was

standing next to the white vehicle, and Officer Martinek asked petitioner if his name was

Weeks. Petitioner responded that he was not Weeks. At that point, Officer Martinek

---

[2]The facts are summarized from the State's Answering Brief filed in *Evans v. State*, No.
501, 2010 (Del.), at pp. 4-8. (D.I. 16)

detected a strong odor of marijuana coming from the area of the white car where petitioner was standing.

When Corporal Morris subsequently arrived, Sylvia Weeks and Ernest Peterson were sitting on the west side of 867 Paul Street. Corporal Morris walked up the driveway, and petitioner yelled that the other police officer was calling him Mr. Weeks. Corporal Morris informed Officer Martinek that the man outside the car was petitioner. Officer Martinek then advised Corporal Morris that he smelled marijuana coming from the white Monte Carlo.

Jabrielle Gilbert, petitioner's girlfriend, was sitting in the front passenger seat of the Monte Carlo. Gilbert exited the automobile and stated that she had been smoking marijuana. A police search of Gilbert's purse revealed a clear plastic bag of crack cocaine, two more sandwich bags of marijuana, a marijuana blunt, a digital scale, and additional sandwich bags. Also inside Gilbert's purse was a counterfeit $20 bill and two room key cards for the Dover Budget Inn. Finally, the police found an open box of plastic sandwich bags located on the floor on the passenger side of the Monte Carlo.

The police arrested Sylvia Weeks on her outstanding warrant, and she was found in possession of $85 and a crack pipe. Weeks informed the police that her $85 was for the crack cocaine she had ordered from petitioner.

The police also arrested Gilbert and petitioner. Before being transported to the Dover Police Station, petitioner said he wanted his cell phone. Two of petitioner's phones were found next to a chair on the porch of the house, and a third phone was found in the driver's seat of the white Monte Carlo.

2

Field testing of the seized suspected contraband revealed 9.6 grams of cocaine, and a total of 5.4 grams of marijuana. Weeks said she telephoned petitioner at number 535-4069 to order the crack cocaine, and petitioner confirmed that this was his phone number. Petitioner was also in possession of $414.

At the police station, Gilbert claimed that the digital scale and all of the crack cocaine and marijuana belonged to her. Gilbert also said that Weeks called her on the phone to order drugs. Weeks contradicted Gilbert and told the police that she had contacted petitioner to purchase crack cocaine, and that petitioner had directed her to meet him at the Paul Street location. During her audio and video recorded interview, Weeks also informed the Dover Police that Gilbert is petitioner's girlfriend and that Gilbert sometimes accompanies petitioner to deliver crack cocaine.

When the police continued their investigation at the Dover Budget Inn, they discovered that the room key cards recovered from the white car and Gilbert's purse belonged to rooms 117 and 235. Since room 235 was vacant, the police only obtained a search warrant for room 117. During the search of room 117, the police located men's and women's clothing, a plastic bag of .8 grams of marijuana in a pair of women's jean shorts, three burnt marijuana blunts on the bed nightstand, and several plastic sandwich bags. Gilbert told police that the marijuana found in the room belonged to her, and she said petitioner had visited her at the room the night before. Police also found paperwork indicating that Gilbert worked at the Dover Budget Inn. Petitioner informed the Dover Police that he had not been to the Budget Inn for several months.

Following his July 8, 2008 arrest, petitioner was released on unsecured bond

on the condition that he assist the police in other contraband drug investigations. As part of his bond release, petitioner was not to have contact with Gilbert, and he was required to wear an ankle bracelet to monitor his location. Petitioner violated these requirements by failing to assist the police and by cutting off his ankle bracelet. As a result, he was wanted by probation and parole.

During the week of August 17, 2008, a confidential informant advised Dover Police Detective Robbins that petitioner was selling crack cocaine from room 216 of the Dover Comfort Inn. On August 22, 2008, while the police were conducting surveillance of the Comfort Inn, they observed petitioner entering and leaving room 216 with a key card on two occasions. The police followed petitioner, but when they attempted to stop petitioner's vehicle, he continued driving for approximately another half mile while talking on a cell phone. When he finally stopped, the police took him into custody. A police search of the vehicle petitioner was operating revealed a clear baggie containing two rocks of suspected crack cocaine and four door key cards for the Comfort Inn. Petitioner said he was staying in room 242, but he did not mention room 216.

The police used one of the key cards found in his car to access room 216 of the Comfort Inn to prevent potential destruction of evidence. Inside room 216, the police found Gilbert sleeping, and saw, in plain view, partially smoked marijuana blunts on the end tables, as well as a clear plastic bag containing suspected marijuana. The police left and obtained a search warrant. During their search of room 216, the police recovered a bag containing suspected crack cocaine, a digital scale, and other plastic

baggies. In a recorded police interview, petitioner admitted that the crack cocaine found in room 216 belonged to him.

In September 2008, petitioner was indicted on the following twelve offenses arising out of his first arrest in July 2008: possession with intent to deliver a narcotic schedule II controlled substance; two counts of possession of marijuana; two counts of possession of a controlled substance within 1000 feet of a school; distribution of a controlled substance within 300 feet of a park; second degree conspiracy; third degree conspiracy; two counts of possession of drug paraphernalia; maintaining a dwelling for keeping a controlled substance; and maintaining a vehicle for keeping a controlled substance. (D.I. 17 at 5-6)

In October 2008, petitioner was indicted on the following twelve offenses arising out of his second arrest in August 2008: trafficking cocaine (10-50 grams); two counts of possession with intent to deliver a narcotic schedule I controlled substance; maintaining a dwelling for keeping a controlled substance; maintaining a vehicle for keeping a controlled substance; noncompliance with condition of bond; second degree conspiracy; two counts of possession of drug paraphernalia; possession of marijuana; driving while license suspended or revoked; and driving after judgment prohibited. (D.I. 17 at 6)

On March 27, 2009, petitioner pled guilty to trafficking cocaine and three counts of possession with intent to deliver cocaine. (D.I. 17 at 6) In exchange for petitioner's guilty plea, the State nolle prossed petitioner's twenty other pending charges, and agreed to refrain from seeking an habitual offender sentence for petitioner. The Superior Court immediately sentenced petitioner that same day to a total of seventy

5

years of Level V incarceration, suspended after twelve years for decreasing levels of probation supervision. Petitioner did not appeal his convictions or sentence. *Id.*

Thereafter, petitioner filed a series of motions challenging his sentence, including: a motion for correction of illegal sentence filed on April 1, 2009; a motion for correction of an illegal sentence and conviction filed on April 28, 2009; and a motion for modification of sentence filed on June 5, 2009. (D.I. 17 at 6-7) The Superior Court denied all three motions on July 23, 2009. *Id.* at 7. Petitioner filed a notice of appeal from that decision, but subsequently voluntarily dismissed the appeal. *Id.*

In April 2009, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). *Id.* The Superior Court denied petitioner's Rule 61 motion in August 2010, and the Delaware Supreme Court affirmed that decision. *See Evans v. State*, 19 A.3d 301 (Table), 2011 WL 1758828, at *1-2 (Del. May 9, 2011). Thereafter, petitioner filed the following motions: (1) petition for a writ of habeas corpus, filed on May 23, 2011 and denied by the Superior Court on May 25, 2011; (2) motion for reargument of the denial of his petition for writ of habeas corpus, filed on June 1, 2011 and denied by the Superior Court on June 6, 2011; (3) motion for modification of sentence, filed on June 24, 2011, and denied by the Superior Court on July 8, 2011, with that decision affirmed by the Delaware Supreme Court on November 22, 2011. (D.I. 17 at 8-9); *see also Evans v. State*, 2011 WL 5866248 (Del. Nov. 22, 2011). In April 2012, petitioner filed a motion for complete review of the sentence, which the Superior Court denied. (D.I. 17 at 9)

Petitioner timely filed a § 2254 application in this court. (D.I. 2) The State filed an answer in opposition (D.I. 17), asserting that the claims should be denied as procedurally barred and/or meritless.

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry,* 513 U.S. 364, 365 (1995); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly,

7

if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting

8

"new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

9

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner raises nine grounds for relief in his application:[3]  (1) his arrest and detention were illegal; (2) the police search and seizure of evidence was illegal; (3) his due process rights were violated when the trial court granted the State's out of time request for an extension of time to respond to petitioner's Rule 61 motion; (4) his convictions for trafficking in cocaine and three counts of possession with intent to distribute cocaine violated the double jeopardy clause because they were multiplicitous; (5) prosecutorial misconduct; (6) the Superior Court erred by denying his motion for modification of sentence because his sentence and convictions are illegal;  (7) defense counsel violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to investigate and present exculpatory evidence; (8) defense counsel provided ineffective assistance; and (9) the trial judge was biased.

---

[3]Petitioner's form application raises seven claims (D.I. 2), and his memorandum in support adds two additional claims (D.I. 7 at 6-7). For ease of reference, the court uses the numbering petitioner assigned to the claims in his memorandum.

## A. Claim Eight: Ineffective Assistance of Counsel

In claim eight, petitioner contends that defense counsel provided ineffective assistance by advising him to plead guilty: (1) without advising him of the elements of the charges, potential defenses, and consequences of pleading guilty; (2) without investigating the facts of the case (such as the name of the registered occupant of the motel room), the exculpatory evidence (such as the absence of petitioner's fingerprints), or the holes and inconsistencies in the State's case that would have exonerated him of the charges; (3) after making an allegedly unauthorized proffer of information to the State that petitioner knew about other crimes; and (4) without advising him that his convictions violated the double jeopardy clause because they were multiplicitous.

Petitioner presented substantially the same allegations to the Delaware State Courts in his Rule 61 proceeding, and the State Courts denied the allegations as meritless. Therefore, habeas relief will only be warranted if the Delaware Supreme Court's denial of claim eight was either contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.

The clearly established precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is

11

a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified the *Strickland/Hill* standard applicable to claim eight. Thus, the Delaware Supreme Court's decision was not contrary to *Strickland* or *Hill*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard to the facts of petitioner's case. When performing this inquiry, the court must review the Delaware

Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens.[4] *Richter*, 562 U.S. at 105. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

Here, the Delaware Supreme Court denied petitioner's ineffective assistance allegations as meritless, explaining that,

> [g]iven the evidence against [petitioner], which included his videotaped admissions, and the possible life sentence he was facing as a habitual offender if he were convicted of any one of the felony charges against him, counsel advised [petitioner] that the plea offered by the State was in his best interest but that she was prepared to go to trial if [petitioner] rejected the plea offer. In reviewing [petitioner's] allegations of ineffectiveness and counsel's response thereto [in her Rule 61 affidavit], the Superior Court found counsel's response to be more credible than [petitioner's] unsubstantiated allegations that his attorney was not fully prepared. The Superior Court concluded, and we agree, that under the circumstances, counsel's performance was well within the standards of reasonableness.

---

[4] As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

13

Moreover, [petitioner] expressed satisfaction with this counsel's representation and stated under oath that he was pleading guilty because he was, in fact, guilty of the charged offenses. In the absence of clear and convincing evidence to the contrary, [petitioner] is bound by these statements. We thus reject [petitioner's] claim that his guilty plea was involuntary due to his counsel's ineffective assistance.

*Evans*, 2011 WL 1758828, at \*2.

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). During his guilty plea colloquy, petitioner stated that he understood the elements of the charges against him and the rights he was giving up by pleading guilty; he discussed the minimum and maximum penalties with defense counsel; he was satisfied with counsel's performance; he was entering the guilty plea because he was guilty of the offenses contained in the plea agreement; and he was freely and voluntarily entering the guilty plea. (D.I. 16, App. to State's Ans. Br. in *Evans v. State*, No.501,2010, at B-69 to B-77) Notably, in this proceeding, petitioner's unsupported allegations fail to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true. As a result, the court concludes that the Delaware Supreme Court reasonably applied *Blackledge* in holding that petitioner was bound by the representations he made during the plea colloquy and that his guilty plea was knowing and voluntary.

Given this determination, the court further concludes that the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard in holding that counsel did not perform deficiently, especially because the record belies petitioner's specific allegations

14

of ineffective assistance. For instance, in her Rule 61 affidavit, defense counsel describes how she was fully prepared to proceed to trial in the event that petitioner did not take a plea. (D.I. 8 at 51) She asserts that she filed several pre-trial motions, including a motion to compel discovery, a motion to suppress evidence, a motion requesting a *Flowers* hearing, and a motion to dismiss the case. Defense counsel also sent out several subpoenas to several witnesses. (D.I. 8 at 51-2) Counsel explains that she continually advised petitioner about the strengths and weaknesses of the charges against him and his chances of prevailing on the aforementioned motions, and that she spent a significant amount of time with petitioner going over the facts of the case. (D.I. 8 at 52) As previously discussed, the guilty plea transcript demonstrates that petitioner stated he understood the elements of the offenses to which he was pleading guilty, that he understood he faced a maximum of seventy years of incarceration under the plea agreement, and that he would face life sentence if he proceeded to trial and was convicted of a felony.

As for petitioner's contention that counsel failed to investigate his case and present the alleged exculpatory evidence, including the name of the registered occupant of the motel rooms and the fact that the fingerprint evidence came back as being of "no value", petitioner does not explain how the identity of the registered occupant of the motel rooms or the fact that fingerprint comparisons of unidentified evidence were of "no value" would have assisted his case, particularly when the evidence against him included his recorded admission that the drugs found in one motel room belonged to him. Petitioner also does not identify the witnesses he believes defense counsel should have interviewed or describe their potential testimony.

15

With respect to the allegedly "unauthorized" information counsel provided to the

State, defense counsel's Rule 61 affidavit explains that petitioner wanted to work out a

deal for a reduced sentence, which involved providing information to the State; she met

with the Deputy Attorney General to proffer that information and provide the necessary

details for the State to confirm petitioner's information. Significantly, petitioner does not

explain how defense counsel's disclosure to the State of this information impacted his

decision to plead guilty.[5]  Moreover, after the State determined that the information was

not accurate or useful, it advised defense counsel that there would be no plea deal.  It

was only through defense counsel's persistent negotiations that a plea agreement was

reached.

Finally, petitioner's contention that defense counsel should have advised him that

his convictions were multiplicitous and violated the double jeopardy clause lacks merit.

Pursuant to well-settled Delaware precedent, a conviction for trafficking cocaine and

possession with intent to deliver cocaine based on the same event and the same

quantity of cocaine is constitutional under *Blockburger v. United States*, 284 U.S. 299

(1932). *See State v. Skyers*, 560 A.2d 1052 (Del. 1989).  Additionally, as explained

later in this opinion, petitioner's convictions for trafficking in cocaine and the three

counts of possession with intent to deliver cocaine do not constitute double

jeopardy/multiplicity violations under the federal constitution. *See infra* at 20-22 .

---

[5]The court also notes that it was the State, and not defense counsel, who responded to
discovery in another case and represented that petitioner would testify as to specific
facts, even though counsel had only "proffered" the information at issue.  When counsel
learned that the State had responded in this way, defense counsel sent a letter to the
Deputy Attorney General involved explaining the impropriety of such action, and
discussed the impropriety of such actions with the Deputy Attorney General in person.
(D.I. 8 at 54)

Thus, counsel did not perform deficiently by failing to advise petitioner of a non-existent double jeopardy/multiplicity violation. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999)(an attorney counsel does not provide ineffective assistance by failing to raise meritless arguments.).

Finally, given the clear benefit petitioner derived by pleading guilty, the court concludes that the Delaware Supreme Court reasonably applied the Strickland/Hill standard in holding that petitioner failed to demonstrate the prejudice necessary to establish a successful ineffective assistance of counsel claim. Petitioner was sentenced to seventy years, suspended after twelve years for decreasing levels of probation. Petitioner does not assert that he would have proceeded to trial and that he would have accepted the risk of being convicted of the twenty-one other charges that were nolle prossed as a result of his entering a plea. Petitioner also does not assert that he would have proceeded to trial and have faced the risk of the State seeking habitual criminal sentencing and a possible resulting mandatory life sentence. (D.I. 16, State's Ans. Br. in Evans v. State, No.501,2010, at 11; D.I. 16, App. to State's Ans. Br. at B-51, B-62, B-63)

Thus, viewing the Delaware Supreme Court's decision through the doubly deferential lens applicable on habeas review, while simultaneously keeping in mind petitioner's plea colloquy statements, the evidence against petitioner, petitioner's unsupported allegations in this proceeding, and the substantial benefit petitioner derived by pleading guilty, the court concludes that the Delaware Supreme Court reasonably applied the Strickland/Hill standard in denying the arguments in claim eight. Accordingly, the court will deny claim eight for failing to satisfy § 2254(d).

17

## B. Claims One, Two, and Five: Waived By Pleading Guilty

In claim one, petitioner asserts that his arrest and detention were illegal. In claim

two, he contends that the police conducted an illegal search and seizure. Finally, in

claim five, petitioner asserts that the prosecutor engaged in misconduct by providing

information to the defense counsel in a different case that allegedly came from

petitioner when, in fact, petitioner never provided such information. Petitioner presented

these three claims to the Delaware Supreme Court on post-conviction appeal, but the

Delaware Supreme Court refused to consider their merits, holding that petitioner

"waived his right to raise those arguments now" because he entered a voluntary guilty

plea. See Evans, 2011 WL 1758828, at *2. In reaching this decision, the Delaware

Supreme Court cited Benge v. State, 945 A.2d 1099, 1201 (Del. 2008)("Under Delaware

law, a voluntary guilty plea constitutes a waiver of any alleged errors or defects

occurring prior to the entry of the plea."). Id.

As explained by the United States Supreme Court in Tollett v. Henderson, 411

U.S. 258 (1973):

> [A] guilty plea represents a break in the chain of events which preceded it in the
> criminal process. When a criminal defendant has solemnly admitted in open
> court that he is in fact guilty of the offense with which he is charged, he may not
> thereafter raise independent claims relating to the deprivation of constitutional
> rights that occurred prior to the entry of the guilty plea. He may only attack the
> voluntary and intelligent character of the guilty plea . . .

Id. at 267. The Supreme Court expanded this rule in United States v. Broce, 488 U.S.

563 (1989):

> A plea of guilty and the ensuing conviction comprehend all of the factual and
> legal elements necessary to sustain a binding, final judgment of guilt and a lawful
> sentence. Accordingly, when the judgment of conviction upon a guilty plea has
> become final and the offender seeks to reopen the proceeding, the inquiry is
> ordinarily confined to whether the underlying plea was both counseled and

18

voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack. There are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence.

*Id.* at 569.

Although the Delaware Supreme Court did not cite to *Tollett* or *Broce* when it denied the instant claims, it appropriately relied on Delaware caselaw articulating the proper federal standard applicable to such claims. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008)(Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases which articulated the proper standard derived from Supreme Court precedent). Thus, the Delaware Supreme Court's decision is not contrary to clearly established law.

In addition, as previously explained, petitioner's plea was counseled, voluntary, and knowing. As a result, the Delaware Supreme Court's holding that petitioner waived his right to raise these pre-plea claims by pleading guilty constituted a reasonable application of clearly established federal law as set forth in *Tollett* and *Broce*. Accordingly, petitioner is not entitled to federal habeas relief for claims one, two and five.

## C. Claim Three: Violation of Due Process During Rule 61 Proceeding

In claim three, petitioner asserts that the Superior Court violated his due process rights during his Rule 61 proceeding by granting the State's out-of-time request for an extension of time to file a response to his Rule 61 motion. Although couched in terms of due process, petitioner's actual complaint is with the Superior Court's procedural ruling in his collateral proceeding. It is well-settled that the "federal role in reviewing an

19

application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's **collateral** proceeding does not enter into the habeas proceeding." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998). Accordingly, the court will deny claim three because it alleges a state law claim that is not cognizable on federal habeas review. *See Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004)("alleged errors in [state] collateral proceedings . . . are not a proper basis for habeas relief from the original conviction.").

### D. Claim Four: Double Jeopardy Violation

In claim four, petitioner contends that his convictions for trafficking in cocaine and for three counts of possession with intent to deliver cocaine violate the double jeopardy clause of the Delaware and federal constitutions because the counts are multiplicitous. Petitioner presented the instant double jeopardy/multiplicity argument to the Delaware Supreme Court on post-conviction appeal. The Delaware Supreme Court denied the claim after explaining that petitioner's voluntary and knowing guilty plea in Delaware effectuated a waiver of his right to raise a double jeopardy argument. The State contends that this court should treat claim four as waived by petitioner's guilty plea, but the court is not persuaded. Although the "waiver by guilty plea" rule can apply to federal constitutional claims alleging a double jeopardy/multiplicity violation, "there is an exception to this rule if the defendant's claim of multiplicity can be proven by reference solely to the [charging document] and existing record." *United States v. Pollen*, 978 F.2d 78, 84 (3d Cir. 1992). Here, petitioner references the record when making the instant double jeopardy/multiplicity argument. Thus, to the extent petitioner raises this

20

claim under the federal constitution, the court will review petitioner's double jeopardy claim on the merits.[6]

The double jeopardy clause provides that "no person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The United States Supreme Court has explained that the clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440 (1989); *United States v. Baird*, 63 F.3d 1213, 1215 (3d Cir. 1995). Multiplicity occurs where an indictment charges a single offense repeatedly in multiple counts. *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998). "[M]ultiplicity may result in multiple sentences for a single offense in violation of double jeopardy, or otherwise prejudice the defendant." *Id.* at 548 n.7. According to well-settled Supreme Court precedent, a defendant who knowingly and voluntarily pleads guilty waives any non-jurisdictional defenses and defects that arose before he entered his guilty plea, as well as certain constitutional rights. *See Broce*, 488 U.S. at 569; *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). However, the Supreme Court has articulated an exception to this rule in the double jeopardy context if the plain language of the charging document demonstrates that a charge "is one which the State may not constitutionally prosecute." *Broce*, 488 U.S. at 575-76; *see also Menna v. New York*, 423 U.S. 61, 62 (1975).

---

[6]To the extent petitioner contends his convictions are multiplicitous and violate the double jeopardy clause of the Delaware constitution, the argument is not cognizable in this proceeding.

21

After reviewing the record, the court concludes that petitioner's double jeopardy/multiplicity claim is legally meritless. Trafficking in cocaine has three elements: (1) actual or constructive possession of cocaine; (2) the amount of cocaine is 10 grams or more; and (3) the possession is knowing. 16 Del. C. § 4753A. Possession with intent to distribute cocaine has two elements: (1) possession of cocaine; and (2) intent to distribute cocaine. 16 Del. C. § 4751. In short, there is no double jeopardy/multiplicity violation stemming from petitioner's conviction for trafficking 10-50 grams of cocaine and his convictions for possession of cocaine, because trafficking requires proof of different statutory elements than the three possession with intent to deliver cocaine offenses.

Likewise, there is no double jeopardy/multiplicity violation stemming from petitioner's three convictions for possession with intent to deliver cocaine, because these convictions were premised on different conduct on two separate days, July 8 and August 22, 2008. Petitioner's plea agreement encompassed three separate indictments. (D.I. 16. State's Motion to Affirm in *Evans v. State*, No.501,2010, at Exh. A, p. 1) The trafficking charge was premised on petitioner's possession of 10-50 grams of cocaine on August 22, 2008. (D.I. 16, State's Motion to Affirm in *Evans v. State*, No.501,2010, at 2, ¶4) The three possession with intent to deliver cocaine charges were premised on separate and distinct conduct that occurred on two separate days: one possession count involved cocaine found on July 8, 2008; one possession count involved cocaine found in petitioner's vehicle on August 22, 2008; and one possession count involved cocaine found in the motel room on August 22, 2008. (D.I. 16, App. to State's Ans. Br. in *Evans v. State*, No.501,2010, at B-15 through B-34)

Accordingly, the court will deny claim four.

## E. Claim Six: Illegal Sentence and Conviction

Next, petitioner contends that "the trial court abused its discretion and erred in its decision to deny his motion for modification of sentence by stating in its order dated July 8, 2011 that the sentence is appropriate for all of the reasons stated at the time of sentencing," because "the information presented to the Court by the prosecution during [petitioner's] plea colloquy and sentencing was false, misleading and completely incorrect." (D.I. 7 at 45) Petitioner presented this claim to the Delaware Supreme Court on appeal of the denial of his motion for sentence modification, and the Delaware Supreme Court affirmed the Superior Court's denial of the claim because petitioner's motion for modification of sentence was both repetitive and untimely under Delaware Superior Court Criminal Rule 35(b). *See Evans*, 2011 WL 5866248, at *1.

By denying petitioner's motion for modification of sentence as repetitive and untimely, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed* that its decision rested on the procedural pre-requisites of Delaware Superior Court Criminal Rule 35(b). The State contends that the procedural pre-requisites of Rule 35(b) constitute an independent and adequate procedural rule precluding federal habeas review. Whether or not the pre-requisites in Delaware Superior Court Criminal Rule 35(b) constitute an independent and adequate state procedural rule is a question of first impression for this court. For the following reasons, the court concludes that the pre-requisites in Rule 35(b) constitute an independent and adequate state law barrier to federal habeas review.

23

A state procedural rule is "independent" if it is independent of the federal question. *See Coleman*, 501 U.S. at 750; *see also Leake v. Dillman*, __ F. App'x __, 2014 WL 6844820, at *2 (3d Cir. Dec. 5, 2014). "A state procedural rule is adequate if it was firmly established and regularly followed at the time of the alleged procedural default." *Ford v. Georgia*, 498 U.S. 411, 424 (1991). To "be considered firmly established and regularly followed: (1) the state procedural rule must speak in unmistakable terms; (2) all appellate courts must have refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance must be consistent with other decisions." *Lewis v. Horn*, 581 F.3d 92, 105 (3d Cir. 2009)(internal citations omitted). The time limitation and bar against repetitive motions contained in Rule 35(b), and the Delaware Supreme Court's application of these pre-requisites to petitioner's case, satisfy all of these requirements. First, Rule 35(b) speaks in clear and unmistakable terms, and does not refer to or rely on federal laws or issues. For instance, the rule explicitly states that "the court may reduce a sentence for imprisonment on a motion made within 90 days after the sentence is imposed," and that the court may consider "an application made more than 90 days after the imposition of sentence only in extraordinary circumstances[7] or pursuant to 11 Del. C. § 4217." Del.

---

[7]The fact that Delaware courts can excuse a petitioner's failure to file a motion for reduction/modification of sentence within the 90-day period upon a showing of "extraordinary circumstances" does not alter the court's conclusion that the time limitation contained in Rule 35(b) is an independent state procedural rule. The "extraordinary circumstances" exception is fact dependent and does not rely on federal law or the federal issue (if any) asserted in the motion for reduction/modification. *See, e.g., State v. Laboy*, 2003 WL 21517974, at *4 (Del. Super. July 1, 2003)(explaining that the Superior Court, in another case, had "identified certain tangible, weighty factors that it viewed as promulgating extraordinary circumstances that prompted the court to exercise its discretion in granting the modification of Lewis' sentence," which included: 1) the nature of the sentence; 2) the time defendant spent actually incarcerated; 3)

24

Super. Ct. Crim. R. 35(b). Rule 35(b) also states that the "court will not consider repetitive requests for reduction of sentence." *Id.* Second, the Delaware Supreme Court's denial of petitioner's Rule 35(b) motion as both repetitive and untimely filed was consistent with other Delaware Supreme Court decisions. Significantly, since 1967, the Delaware State Courts have consistently and repeatedly held that the failure to comply with the filing time period set forth in Rule 35(b) (in the absence of extraordinary circumstances), or the filing of a repetitive motion, warrant the denial such motions; the cases cited hereafter represent only a small sampling of such decisions. *See Johnson v. State*, 234 A.2d 447 (Del. 1967)(untimely); *Vogel v. State*, 558 A.2d 297 (Table), 1989 WL 27636 (Del. Feb. 7, 1989)(repetitive); *Gibbs v. State*, 568 A.2d 1072 (Table), 1989 WL 154705 (Del. Nov. 30, 1989)(untimely); *Holt v. State*, 663 A.2d 487(Table), 1995 WL 379219 (Del. June 20, 1995); *Hoskins v. State*, 748 A.2d 407 (Table), 2000 WL 275620 (Del. March 1, 2000)(untimely and repetitive); *Webster v. State*, 795 A.2d 668 (Table), 2002 WL 487177 (Del. Mar. 26, 2002)(untimely and repetitive); *Correa v. State*, 940 A.2d 945 (Table), 2007 WL 4110622 (Del. Nov. 20, 2007)(repetitive); *Hall v. State*, 3 A.3d 1097 (Table), 2010 WL 3222441 (Del. Aug. 2010)(untimely and repetitive); *DeShields v. State*, 41 A.3d 429 (Table), 2012 WL 1072298 (Del. Mar. 30, 2012)(untimely and repetitive); *Selby v. State*, 61 A.3d 618 (Table), 2013 WL 210506 (Del. Jan. 17, 2013); *DeJesus v. State*, 93 A.3d 653 (Table), 2014 WL 2609528 (Del. June 10, 2014)(untimely and repetitive). Based on the foregoing, the court concludes that the timing and anti-repetition requirements contained in Rule 35(b) were firmly

---

possible deportation of defendant; and 4) the hardship of innocent persons that would result from defendant's deportation, viewed collectively").

established and regularly followed when petitioner filed his second Rule 35(b) motion in June 2011.

Given the Delaware Supreme Court's explicit explanation that its refusal to review the substance of petitioner's instant argument was due to the fact that the motion was repetitive and untimely, the court concurs with the State's contention that the Delaware Supreme Court relied on an independent and adequate state procedural rule in refusing to review the merits of claim six. Thus, claim six is procedurally defaulted, meaning that the court cannot review its merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner does not allege, nor does the court discern, any cause for his default of the instant argument. In the absence of cause, the court will not address the issue of prejudice. Moreover, to the extent petitioner's assertion that the lower court's failure to cite reliable information in support of its conviction and sentence should be construed as an allegation of actual innocence and an attempt to overcome his procedural default under the miscarriage of justice exception, it is unavailing. Notably, petitioner does not provide any new reliable evidence of his actual innocence.

Accordingly, the court will deny claim six as procedurally barred.

## F. Claim Seven: Ineffective Assistance of Counsel for Violating *Brady* and Failing to Investigate and Present Exculpatory Evidence

In claim seven, petitioner contends that defense counsel violated *Brady v. Maryland*, 373 U.S. 73 (1963) and, therefore, provided ineffective assistance by failing

to "investigate or present exculpatory fingerprint evidence to the court on [his] behalf."[8]
(D.I. 7 at 42-44) Petitioner presented this particular "ineffective assistance/*Brady*" claim
to the Delaware Supreme Court on appeal of the denial of his motion for sentence
modification, and the Delaware Supreme Court dismissed the appeal after determining
that his motion for modification of sentence was both repetitive and untimely under
Delaware Superior Court Criminal Rule 35(b). *See Evans*, 2011 WL 5866248, at *1. By
applying the procedural requirements of Rule 35(b) and denying the motion as repetitive
and untimely, the Delaware Supreme Court articulated a "plain statement" under *Harris
v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. As
just explained, the procedural requirements in Rule 35(b) constitute an adequate and
independent state procedural rule precluding habeas review of the merits absent a
showing of cause and prejudice, or a miscarriage of justice.

Petitioner does not allege, and the court does not discern, any cause for his
default of the instant argument. In the absence of cause, the court will not address the
issue of prejudice. Moreover, to the extent petitioner's assertion that "this is a
miscarriage of justice" is an attempt to fall within the miscarriage of justice exception to
the procedural default doctrine, his attempt is unavailing. (D.I. 7 at 49) Once again,
petitioner does not provide any new reliable evidence of his actual innocence.

---

[8]A *Brady* claim usually involves the government's act of withholding exculpatory
evidence, not a defense attorney's failure to discover and present exculpatory evidence.
Even though petitioner cites *Brady*, the court does not view claim seven as asserting a
"true" *Brady* claim, because petitioner's argument focuses on defense counsel's alleged
failure to discover exculpatory evidence. To the extent the court should construe claim
seven as merely duplicating the argument in claim eight concerning defense counsel's
failure to investigate and present exculpatory evidence, the court alternatively denies
claim seven for failing to satisfy § 2254(d). *See supra* at 11-17.

Accordingly, the court will deny claim seven as procedurally barred.

## G. Claim Nine: Judicial Bias

In his final claim, petitioner asserts that the trial court exhibited "judicial bias" by permitting defense counsel to appear before it several times prior to accepting his guilty plea, and also by not conducting its own investigation into the facts of the charges to which he pled guilty. Petitioner presented this claim to the Delaware Supreme Court when he appealed the denial of his Rule 61 motion. However, citing Delaware Supreme Court Rule 8, the Delaware Supreme Court refused to consider the merits of the claim because petitioner did not present the argument to the Superior Court in his Rule 61 motion.

By applying the procedural bar of Delaware Supreme Court Rule 8, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision to deny claim nine rested on state law grounds. This court has previously held that Rule 8 is an independent and adequate state procedural rule precluding federal habeas review absent a showing of cause and prejudice. *See Campbell v. Burris,* 515 F.3d 172, 182 (3d Cir. 2008) (Rule 8). As such, the court cannot review the merits of claim nine absent a showing of cause and prejudice.

Petitioner has not alleged cause, prejudice, or a manifest injustice to excuse his procedural default. Thus, the court will deny claim nine as procedurally barred.

## I. Pending Motion

Petitioner filed a motion to voluntarily withdraw his habeas application. (D.I. 25) Having already decided to deny the application in its entirety, the court will deny petitioner's motion as moot.

28

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.